Smith, J.
We have had some difficulty in arriving at a conclusion satisfactory to ourselves as to one of the principal questions argued to us by counsel, viz., whether it was shown by the evidence that the lumber in question, which the defendants below, Bennett & Witte, were .charged with converting to their own use, to the damage of Williamson, was at the time the property of Williamson, as must have been found by the jury to justify the verdict which was rendered, That is, whether *108 the logs from which the lumber in question was sawed by Tuthill & Co. had been sold to them by Williamson in such a way that the title passed to them and they had a right to dispose of it as they chose, or whether the arrangement was that the logs were delivered by Williamson to Tuthill & Co. to be sawed into lumber for him, and the title thereto and the lumber sawed therefrom, were to remain the property of Williamson until an agreed price was paid him therefor, and Tuthill & Co. to have the right to sell said lumber and apply the proceeds of sale to the' payment of the purchase price to Williamson.. On this point the evidence was exceedingly conflicting, there being evidence on each side which tended strongly to support the claims of the respective parties. But, on- a careful review of the whole testimony, we are not able to say that the verdict of the jury, which upheld the claim of the plaintiff, was on this point so manifestly against the weight of the evidence as to justify us in holding that the trial judge erred in his refusal, on this ground, to grant a new trial.
The evidence in this case clearly showed, that if the claim of the plaintiff as to his retaining the title to this property was correct, that he had expressly appointed Tuthill & Co. as his agents, and gave them full power to sell the lumber, and apply the proceeds, less expenses, to the payment of their debt to Williamson, for the purchase-price thereof. If, therefore,1 they had sold it to Bennett & Witte for cash or its equivalent, there can be no doubt but that the latter would have acquired a good title thereto. But the difficulty in this case is, that it appears from the evidence, that some time - before the alleged sale by Tuthill & Co. to Bennett & Witte, a contract had been made between those parties, by which Tut-hill & Co. agreed to sell to Bennett & Witte all the lumber of a particular character which they should saw in a given time, at a fixed price, and Bennett & Witte had made certain advances to Tuthill & Co. on this contract. Afterwards, when the trade occurred which is the subject of controversy, Tut-hill & Co.,.in consideration of the additional sum of $1,700 *109 then paid, agreed to sell to Bennett & Witte a large lot of this particular lumber sawed from the Williamson logs, to be paid for by the $1,700, and the advances before made, and the lumber so sold, we think the evidence shows, was then marked for Bennett & Witte, and thus delivered to them, and was subsequently taken away by them, and this is the conversion for which Williamson claims to recover damages from them, and by the verdict of the jury and the action of the court they did recover a judgment for the value of the lumber so taken, less the $1,700, which was allowed Bennett & Witte as a credit.
We think this also clearly to be the law, that if Tuthill & Co. were acting as the agents of Williamson to sell this lumber, and Bennett & Witte knew the relation which they occupied, and that Williamson was the owner of it, or if they had ■reasonable grounds to believe that this was the case, an arrangement such as was made to sell the lumber partly for cash, and the balance to be paid by the application thereto of a claim which the purchaser had against the agent himself, such an arrangement as against Williamson, the owner, would not be allowed to stand or be binding upon him, at least ini so far as all but the $1,700 was concerned, unless he chose to' ratify it. It would be in the nature'of a fraud upon him. But if the evidence shows, as we think it does, that Bennett & Witte had no knowledge whatever that Williamson was the owner of the property, and believed, and had good ground to believe, that Tuthill & Co. were the absolute owners thereof, and had the right to make such a contract, and it was made, then .we think the contract was a valid and binding one, even upon Williamson, in all its parts, and he would not be at liberty to repudiate it and turn round and recover the possession :of the property, the title to which had passed to Bennett & Witte, and for which they had made full payment according ¡to the terms of the contract. .Nor if the owner repudiated.the contract, could he recover the value of the property on the theory that he was still, the. owner of it. Clearly, however., if *110 part of the purchase-price was unpaid, he would have a right to notify the purchaser of his ownership, and compel the payment to him as the real owner of the amount still unpaid according to the terms of the contract. But if he thus affirm the contract, he must do it in all of its parts, and must accept the payment as made, in part at least, by the antecedent debt of the agent to the purchaser. See 39 Ohio St. 79. And this doctrine seems entirely just and reasonable. The principal has put the property into the hands of his agent, and authorized him to dispose of it. He does not in any way make known to the world, or to this particular purchaser, that he is the owner of the property and that the person in whose possession the property is, is only his agent. He thus holds the agent out to the world as the absolute owner, and why may not a person ignorant of the true relation between them deal with the agent as such owner ? It would seem too late for the owner to cry out, after an innocent party has put himself in the relation of a purchaser of the property, and paid a large sum in cash for it, when it is probable that his great inducement for buying the property may have been thus to realize the amount of his debt against the seller.
„ But whatever may be the reason or justice of the rule, we consider the doctrine of the law to be well settled by the text books and adjudged cases. We refer to some of those cited by the plaintiff in error, and we do not think that the authorities referred to by counsel on the other side weaken their force. Mecham on Agency,’secs. 773, 1043; Wald’s Pollock on Contracts, 2d ed., 101; Story on Sales, secs. 93-4; 35 Mo. 396; 24 Wend. 458; 97 Pa. 309; Wharton on Agency, sec. 405.
On this ground, we think that the finding’ of the jury was clearly against the evidence, and that the first special charge given for the plaintiff below, as to this antecedent debt (and which was excepted to) was erroneous.
We are inclined to the opinion that the ruling of the trial judge, as to the admission of evidence as to the intent of the parties in marking the lumber, was not erroneous and preju *111 dicial. The intent of the parties in this matter was not a question in issue, and so far as we can see, proof in regard to it would not throw any light on the controversy.
C. K. Shunk, for plaintiff in error.
David Davis and Chas. W. Baker, contra.
But, for the reasons stated, the judgment will be reversed and remanded for a new trial, or such other proceedings as may be warranted by law. ° .